
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 21 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SYLVESTER RICHARDSON, | ) | Civil Action No. 7:10-cv-00078 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN TRACY RAY, et al., | ) | By:   Hon. James C. Turk |
|     Defendants. | ) |        Senior United States District Judge |

Sylvester Richardson, a Virginia inmate proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Tracy Ray, former Warden of the Red Onion State Prison ("ROSP"); Captain McCoy; Lieutenant Day; and Correctional Officers Ingle, J. Bellamy, Younce,[1] Belcher, and Mullins. Plaintiff alleges that defendants permitted or used excessive force against him in violation of the Eighth Amendment of the United States Constitution. Defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court grants defendants' motion for summary judgment.

I.

In the Complaint and amendment, plaintiff alleges three specific instances of excessive force against the named defendants.[2] Plaintiff requests as relief for all claims that the defendants take a lie-detector test and give him $500,000. Plaintiff acknowledges in the response to

---

[1] Plaintiff named this defendant, "Yaunce," but the correct name is Younce.
[2] In an attachment to his Complaint, plaintiff lists various grievances plaintiff filed in 2006 and 2007 about excessive force, not receiving showers, and inadequate food. Plaintiff did not specifically list these claims on the form Complaint and has not subsequently referenced them during this litigation. The court does not recite the list because the court is not responsible for developing plaintiff's causes of action. See, e.g., United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Even if the court liberally construed the list as multiple claims, the claims are barred by the statute of limitations and fail to state a claim upon which relief may be granted. See, e.g., discussion infra Part II.B (explaining that claims that accrued before January 26, 2008, are barred by the statute of limitations).

defendants' motion for summary judgment that he sues each defendant in only an official capacity.[3]

First, plaintiff alleges that Officer Ingle used excessive force on October 24, 2007, by choking plaintiff, crushing plaintiff's neck, and trying to break plaintiff's fingers. Second, plaintiff generally alleges that excessive force occurred on June 17, 2009, when Ingle and unknown officers entered plaintiff's cell to extract him. "They assaulted [plaintiff] by kneeing . . . and punching [him]. . . . Officer Ingle and another [unknown] officer . . . injured [his] fingers by bending them. . . ." (Compl. 4.) Plaintiff acknowledges that he did not file a grievance about the alleged use of excessive force on June 17, 2009. (Id.)

Third, plaintiff alleges that the remaining defendants used or permitted the use of excessive force during a September 26, 2009, cell extraction because plaintiff complained about receiving rotten eggs for breakfast. Lieutenant Day, Bellamy, Younce, Belcher, and Mullins allegedly kneed and punched plaintiff while plaintiff was restrained, pushed plaintiff's face into a pool of mace, and repeatedly slammed plaintiff's head against the floor. Plaintiff allegedly lost a lot of blood and received a black eye and a swollen forehead. Captain McCoy allegedly allowed the use of excessive force while supervising the cell extraction, and plaintiff believes Warden Ray is liable for all subordinates' acts and omissions. Plaintiff denies biting any officer during the incident.

---

[3] Defendants recognized that plaintiff did not state in the Complaint whether plaintiff sued each defendant in an official or individual capacity. Defendants argue that each defendant is immune from damages if sued in an official capacity and is entitled to qualified immunity in an individual capacity. In response to these arguments, plaintiff plainly states, "To clarify, I am suing the Defendants in their Official Capacities." (Pl.'s Resp. to Def.s' Mot. Summ. J. (no. 63) 1.)

2

The record reveals the following facts about the September 26, 2009, cell extraction in a light more favorable to plaintiff. Lieutenant Day learned that plaintiff covered the cell-door window and refused to comply with officers' orders to uncover the window. Staff informed Captain McCoy of the problem, and Captain McCoy authorized Lieutenant Day to prepare OC spray[4] and assemble a cell-extraction team.

Captain McCoy arrived at plaintiff's cell, ordered plaintiff to uncover the window, and advised plaintiff that OC spray would be put in the cell if he did not uncover the window. Plaintiff did not comply, and Lieutenant Day sprayed a one-half to one-second burst of OC spray into plaintiff's cell. Captain McCoy's warning, Lieutenant Day's OC spray, and plaintiff's refusal to comply repeated twice more. Captain McCoy gave plaintiff a final opportunity to uncover the window before the cell-extraction team entered the cell, but plaintiff still refused to comply.

Captain McCoy ordered the extraction team to line up outside plaintiff's cell door. Officer Bellamy, the first officer in line and closest to the cell door, held a NOVA shield in front of the cell door.[5] Staff slightly opened plaintiff's cell door to allow Bellamy to see inside while safely behind the shield, and Bellamy saw plaintiff holding a sock stuffed with something. Staff closed the cell door briefly, and McCoy gave the cell-extraction team permission to enter plaintiff's cell.

Bellamy entered the cell first with the NOVA shield, and Younce, Belcher, and Mullins followed. Plaintiff swung his weighted sock, which contained two small bars of soap, and hit the back of Bellamy's protective vest. Bellamy shocked plaintiff with the NOVA shield for

---

[4] OC spray contains "oleoresin capsicum" and is commonly known as pepper spray.
[5] A NOVA shield is a long, clear plastic shield that can transmit electric shocks to anyone in contact with the front of the shield. Younce, Belcher, Mullins, and Collins stood behind Bellamy. Correctional Officer Collins was the last member of the cell extraction team to enter the cell, but plaintiff did not name Collins as a defendant. See Pl.'s Additional Evid. (no. 24, 25) 1.

3

approximately two seconds, and Bellamy, Younce, Belcher, and Mullins tried to pin plaintiff to the concrete floor. Plaintiff resisted, and the officers wrestled with plaintiff on the concrete floor. Bellamy, Younce, Belcher, and Mullins ultimately restrained plaintiff, put his head in a spit smock, and stood him up from where a small amount of blood had pooled. Officers escorted plaintiff to medical personnel, who noted two cuts, approximately two centimeters long, above plaintiff's right eye.[6] The nurse cleaned and sealed the cuts with a liquid skin adhesive, Lieutenant Day photographed the cuts and welt on plaintiff's face, and staff returned plaintiff to a cell.[7]

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[8] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325

---

[6] Plaintiff did not want staff to wash off the OC residue.
[7] A VDOC officer video recorded this entire incident. The video is a continuous recording from a handheld camera, starting with plaintiff's covered cell-door window and ending with his placement in a different cell. The video reflects the recited facts. Plaintiff acknowledges he viewed the recording, but he speculates that the video is of a reenactment. Plaintiff believes another inmate acted as plaintiff. (Pl.'s Letter (no. 65) 1.)
[8] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

4

(1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). The court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to correct

5

deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

A. PLAINTIFF MAY NOT RECOVER DAMAGES.

Plaintiff sues each defendant in only an official capacity, and he seeks monetary and equitable relief. Neither a state nor a state official acting in an official capacity is a "person" for a § 1983 damages action. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Accordingly, each defendant is immune from suit insofar as plaintiff sues a defendant in an official capacity for damages.

B. THE STATUTE OF LIMITATIONS BARS CONSIDERATION OF MOST OF PLAINTIFF'S CLAIMS.

Section 1983 adopts the statute of limitations that the forum state uses for general personal injury cases. Owens v. Okure, 488 U.S. 235, 249-50 (1989). The events about which plaintiff complains occurred in Virginia. Virginia's statute of limitations applicable for § 1983 actions is two years. VA. CODE § 8.01-243(A).

Federal law governs the question of when a cause of action accrues. See Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). A federal cause of action accrues when "the plaintiff has a complete and present cause of action" or when the plaintiff "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997).

Plaintiff alleges in the Complaint that Officer Ingle choked plaintiff, crushed plaintiff's neck, and tried to break plaintiff's fingers on October 24, 2007, and used excessive force against

6

plaintiff during the June 17, 2009, cell extraction. Therefore, plaintiff knew the facts to support two Eighth Amendment excessive force claims against Officer Ingle as of October 24, 2007, and June 17, 2009, respectively. Plaintiff had two years, until October 24, 2009, and June 17, 2011, respectively, to file those claims. Plaintiff's cell extraction involving the remaining defendants occurred on September 26, 2009, and plaintiff had until September 26, 2011, to file the third excessive force claim.

Plaintiff executed the Complaint on January 26, 2010, which would be the earliest date plaintiff could have handed it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 275 (1988) (describing the prison-mailbox rule). Plaintiff filed the first excessive force claim against Ingle beyond the two-year limitations period, and, thus, the claim that Ingle choked plaintiff, crushed plaintiff's neck, and tried to break plaintiff's fingers on October 24, 2007, is now barred by the statute of limitations.[9] Plaintiff timely filed the other excessive force claims about the June 17, 2007, and September 26, 2009, cell extractions.

C. PLAINTIFF IS NOT ENTITLED TO EQUITABLE RELIEF.

1. Plaintiff failed to exhaust administrative remedies about the June 17, 2009, cell extraction.

Plaintiff generally alleges that excessive force occurred on June 17, 2009, when Ingle and unknown officers went in plaintiff's cell to extract plaintiff. "They" assaulted plaintiff by kneeing and punching plaintiff, and Officer Ingle and an unknown officer bent plaintiff's fingers. Plaintiff did not file a grievance about this alleged use of excessive force. (Id.)

---

[9] As previously noted supra, plaintiff's list of grievances concern unrelated matters he knew happened in 2006 and 2007, which also accrued beyond the two-year limitations period, and are similarly barred.

7

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002).

The court takes judicial notice that the Virginia Department of Corrections ("VDOC") had an applicable grievance procedure effective on and after June 17, 2007, and the policy permitted inmates to grieve allegations of excessive force. See Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts which can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); Shabazz v. Va. Dep't of Corr., No. 3:10-cv-638, 2012 U.S. Dist. LEXIS 17746, at *9-17, 2012 WL 463562, at *2-5 (E.D. Va. Feb. 13, 2012) (taking judicial notice of applicable VDOC grievance procedure and citing cases). See also Depaola v. Taylor, No. 7:10-cv-000398, 2011 U.S. Dist. LEXIS 62920, at *13-16, 31-33, 2011 WL 2445859, at *4-5, 10-11 (W.D. Va. June 15, 2011) (Sargent, Mag. J.) (describing the applicable VDOC grievance policy, OP 866.1, which was effective on November 1, 2007, and is part of the court's record). A VDOC inmate must file an informal resolution, a regular grievance, and an appeal to a regional director to exhaust administrative remedies about the alleged use of excessive force. Plaintiff's admission that he did not file any grievance about the alleged June 17, 2009, cell extraction

8

precludes relief in federal court. Accordingly, Ingle is entitled to summary judgment.[10] See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 682 (4th Cir. 2005) (holding that a court may dismiss a claim for failing to exhaust administrative remedies without giving an inmate an opportunity to respond when that failure is apparent from the face of the complaint).

2. Plaintiff does not establish that an Eighth Amendment violation of excessive force occurred during the September 26, 2009, cell extraction.

A prisoner alleging the use of excessive force in violation of the Eighth Amendment must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The subjective component encompasses "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Id. at 321 (internal quotation marks, alterations, and citation omitted). The objective element generally requires more than a de minimis use of force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid [Eighth Amendment] excessive force claim." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010). Courts recognize that correctional officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Consequently, the court must give prison officials

---

[10] Plaintiff does not relate any defendant other than Ingle to the June 17, 2009, cell extraction.

9

"wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson, 503 U.S. at 7.

In light of the subjective factors the court must consider, plaintiff fails to establish that Lieutenant Day, Bellamy, Younce, Belcher, and Mullins used force maliciously or sadistically for the purpose of causing plaintiff harm. Captain McCoy tried to avoid the use of force by warning plaintiff that OC spray would be used if plaintiff did not uncover the cell-door window. Captain McCoy authorized and Lieutenant Day used OC spray three separate times to encourage plaintiff's compliance to no avail. Plaintiff's last opportunity to avoid force occurred when plaintiff saw the cell extraction team wearing body armor and holding the NOVA shield outside the cell door. Plaintiff refused to comply, armed himself, and left defendants with no other reasonable alternative other than to enter the cell to restore discipline. Lieutenant Day, Bellamy, Younce, Belcher, and Mullins had no alternative but to wrestle plaintiff into restraints on the concrete floor because plaintiff refused every order to submit to restraints. The fact plaintiff received two cuts, a welt, and a black eye from being wrestled to the ground during a completely avoidable physical altercation is a direct result of plaintiff's obstinance. The two small cuts, welt, and black eye are de minimis injuries that evince the use of de minimis force. Accordingly, the court concludes that Lieutenant Day, Bellamy, Younce, Belcher, and Mullins did not use excessive force, and these defendants are entitled to summary judgment.[11]

---

[11] Plaintiff's accusation that the eighty minute video of the September 26, 2009, cell extraction is a reenactment with an actor used in plaintiff's place is so outlandish "that no reasonable jury could believe it," and such speculation is insufficient to defeat defendants' motion for summary judgment.

10

Ray was the Warden of the ROSP on September 26, 2009, and Captain McCoy was present during the September 26, 2009, cell extraction. Plaintiff argues that Ray and Captain McCoy are liable for subordinates' allegedly unconstitutional actions. Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991) (finding that § 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs). A correctional officer may be liable on a theory of bystander liability if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002). Plaintiff must prove a violation of a constitutional right as a prerequisite to establishing bystander liability. Willis v. Oakes, 493 F. Supp.2d 776, 784 (W.D. Va. 2007).

Ray cannot be liable merely because Ray was the other defendants' ultimate superior, and plaintiff does not allege any other basis of liability against Ray besides respondeat superior. Plaintiff fails to establish that any defendant used excessive force in Captain McCoy's presence or pursuant to Captain McCoy's policy or custom. Accordingly, Ray and McCoy are entitled to summary judgment.

III.

For the foregoing reasons, the court grants defendants' motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

ENTER: This 21st day of March, 2012.

/s/ James C. Turk
Senior United States District Judge